**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHONDA Y. WILLIAMS,** | **Civil Action No. 3:25-cv-00121-SLH** |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **FLAGSTAR BANK, N.A.; KML LAW GROUP, P.C.; and NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,** | |
| Defendants. | |

Plaintiff Shonda Y. Williams files this First Amended Complaint against Defendants Flagstar Bank, N.A. ("Flagstar"), KML Law Group, P.C. ("KML"), and Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), and alleges as follows:

## NATURE OF THE ACTION

1. This action concerns Defendants' independent acts and omissions in servicing, collecting, transferring, accounting for, and enforcing a residential mortgage loan and receivable associated with 1516 Third Avenue, Altoona, Pennsylvania 16602 (the "Property").

2. Plaintiff does not rest her claims on the proposition that her Chapter 7 discharge, standing alone, automatically extinguished a valid lien. Her claims arise from Defendants' own post-discharge servicing, loss-mitigation, transfer-notice, debt-collection, disclosure, accounting, and deceptive-conduct violations, including inconsistent representations about who held, serviced, owned, collected, or received economic benefits from the same receivable.

3. Defendants represented at different times that Flagstar held and serviced the obligation, that the foreclosure could proceed in Flagstar's name, and that Nationstar later obtained servicing or ownership rights. Plaintiff's records also reflect securitization and government-guarantee

channels through which additional entities obtained or claimed beneficial interests, payments, credits, insurance, guarantees, advances, or other economic value tied to mortgage receivables.

4. Plaintiff seeks damages and prospective or declaratory relief for those independent violations, together with a complete, transaction-level reconciliation identifying the person or entity entitled to receive each payment at each material time and every payment, credit, advance, guarantee, insurance recovery, sale proceeds, or other value applied—or not applied—to the alleged balance.

5. This action is not brought merely to obtain appellate review of a state-court judgment. Plaintiff challenges actionable conduct by Defendants before, during, and after the foreclosure proceedings and seeks relief available for those independent violations.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

7. This Court has supplemental jurisdiction over the related Pennsylvania claims under 28 U.S.C. § 1367 because all claims arise from the same loan, servicing history, collection activity, foreclosure, and course of conduct.

8. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202. The requested declarations are remedies tied to an actual controversy and do not substitute for the substantive causes of action pleaded below.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Property is in Blair County, Pennsylvania; a substantial part of the events or omissions occurred in this District; and the foreclosure action was prosecuted in this District.

## PARTIES

10. Plaintiff Shonda Y. Williams is a natural person and consumer. She formerly used the name Shonda Yvette Burgos. Plaintiff notified Defendants of her legal name and correct contact information, yet Defendants continued to use inconsistent or obsolete identification in material records and communications.

11. Defendant Flagstar Bank, N.A. is a national banking association that serviced, collected, administered, claimed to hold, and caused enforcement of the mortgage obligation at issue. Flagstar conducted business in Pennsylvania and directed acts toward the Property and Plaintiff.

12. Defendant Nationstar Mortgage LLC, doing business as Mr. Cooper, is a mortgage servicer and debt collector that acquired or claimed servicing, collection, ownership, or other rights concerning the alleged obligation after default. Nationstar conducted business in Pennsylvania and directed acts toward Plaintiff and the Property.

13. Defendant KML Law Group, P.C. is a law firm that regularly collects mortgage debts and acted as foreclosure counsel and debt collector concerning Plaintiff's alleged obligation. KML used judicial process and communications to collect the alleged debt and enforce the mortgage.

## FACTUAL ALLEGATIONS

### A. The Loan, Mortgage, and Recorded Chain

14. On or about February 15, 2019, Plaintiff entered a residential mortgage transaction in the original principal amount of $49,094.00, bearing stated interest at 5.25%, with Snare & Associates Mortgage Services, LLC identified as the original lender. The transaction was associated with an FHA-insured loan and the Property.

15. The mortgage was recorded in Blair County at Instrument No. 201902209. Records identify Loan No. 181206001, Flagstar servicing number 0505016573, and MERS MIN 1012229-0181206001-7.

16. An assignment to Flagstar was recorded on or about February 7, 2022, at Blair County Instrument No. 202202207. Plaintiff disputes that the recorded assignment, standing alone, resolves all questions concerning ownership of the receivable, possession and status of the note, beneficial interests, servicing authority, or application of third-party proceeds.

17. On December 12, 2023, Flagstar sent a default notice representing that it held and serviced the mortgage and stating a cure amount of approximately $2,818.62. That representation is material because Flagstar later relied on different servicing, transfer, and beneficial-interest positions without providing one reconciled loan history.

**B. Bankruptcy Discharge and Post-Discharge Conduct**

18. Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Pennsylvania on July 10, 2023, Case No. 23-70224-JAD, and received a discharge on November 16, 2023.

19. Plaintiff did not sign a reaffirmation agreement. The discharge eliminated Plaintiff's personal liability on discharged debt. Plaintiff acknowledges that an otherwise valid lien may survive discharge; she disputes Defendants' independent representations, accounting, loss-mitigation conduct, collection activity, and authority as pleaded here.

20. After discharge, Defendants continued communications and conduct concerning payment and enforcement. To the extent any Defendant sought payment from Plaintiff personally, rather than limiting conduct to lawful in-rem enforcement, that distinction was not stated clearly and consistently.

21. Defendants' records and consumer-reporting treatment described the account at times as discharged, closed, transferred, or paid in full, while Defendants simultaneously asserted a continuing collectible balance and enforced the same receivable. Plaintiff does not allege that a

credit-reporting label alone extinguished a lien; she alleges that the contradictory treatment required an accurate explanation and reconciliation that Defendants did not provide.

### C. Loss Mitigation, Proposed Modification, and Foreclosure

22. Flagstar filed a mortgage-foreclosure action in the Blair County Court of Common Pleas on or about February 16, 2024, at No. 2024 GN 466. The foreclosure complaint sought in-rem relief and acknowledged Plaintiff's bankruptcy discharge.

23. On March 13, 2024, Plaintiff filed an Answer and Affidavit in the foreclosure action. The state-court docket reproduced as KML's Exhibit A records that filing.

24. During the foreclosure and more than 37 days before the eventual sheriff's sale, Plaintiff submitted the information and documents Flagstar requested for loss-mitigation review, including documents addressing the Property's trust ownership and Plaintiff's authority to communicate concerning the account.

25. Plaintiff supplied all documents then requested and reasonably available to her. Flagstar nevertheless terminated, rejected, or failed to complete the review based on an asserted missing signature or similar formal defect, although the submitted trust-related documents addressed the signature and authority issue.

26. Flagstar did not give Plaintiff a fair and consistent opportunity to cure the claimed submission defect, did not identify the allegedly missing item with sufficient clarity, and continued foreclosure activity while the application and related communications remained unresolved.

27. A proposed modification dated on or about December 10, 2024 reflected an unpaid principal balance of approximately $45,464.93 plus approximately $5,177.75 identified as "New Money (Cap)," producing a proposed balance of approximately $50,642.68.

28. Flagstar did not provide a complete itemization establishing the source, contractual basis, recipient, and application of each amount included in the proposed capitalization, or reconciling

those figures with all payments, advances, credits, guarantee or insurance proceeds, and transfers of beneficial interests.

29. A foreclosure judgment was entered on March 3, 2025. Plaintiff's subsequent efforts to obtain emergency relief and to raise federal servicing and disclosure violations did not result in a merits determination of every independent statutory claim pleaded here.

**D. Transfer to Nationstar and Conflicting Account Status**

30. During 2025, Flagstar transferred or purported to transfer servicing, collection, ownership, or other rights concerning the obligation to Nationstar, while Flagstar's portal and other records continued to display or administer material account information.

31. Plaintiff did not receive a clear, timely, and accurate explanation identifying the effective date of transfer, whether Nationstar became the creditor or only the servicer, the name and contact information of the owner of the obligation, and how all pre-transfer transactions and credits were carried forward.

32. Flagstar and Nationstar each possessed portions of the relevant servicing history, but neither provided Plaintiff a single reconciled account showing the opening balance, every debit and credit, suspense activity, corporate advances, payments by or for Plaintiff, proceeds from insurance or guarantees, transfer consideration, and the closing balance at each transfer.

33. Nationstar obtained or asserted collection rights after the loan was already in default and after foreclosure had commenced. Nationstar communicated or caused communications concerning a debt whose amount, ownership, and legal status remained materially disputed.

**E. Receivable, Prospectus, and Conflicting-Note Records**

34. Plaintiff possesses and has identified Flagstar prospectus-supplement and SEC Form 424B5 materials, together with related mortgage-receivable and securitization records. Those records are documents—not a premise that securitization automatically extinguished the obligation.

35. The records show that Flagstar participated at the institutional level in channels involving the pooling, sale, transfer, or securitization of mortgage receivables, including government-guaranteed mortgage-backed securities. Flagstar's company-level Ginnie Mae issuer activity is relevant to tracing the economic treatment of the receivable.

36. Plaintiff further alleges that the documentary set associated with the transaction includes or associates a promissory note or note data belonging to another person or prior obligor, rather than a note executed by Plaintiff. Defendants have not reconciled why that instrument or data appears in the records associated with Plaintiff's receivable or enforcement history.

37. Plaintiff does not allege that the present record conclusively identifies a particular Ginnie Mae pool for her loan. Loan-level pool, custodial, transfer, and investor data are maintained by Defendants, their custodians, nominees, subservicers, and counterparties and are not available to Plaintiff without disclosure or discovery.

38. At different times, Flagstar, Nationstar, and one or more persons or entities holding beneficial interests through a securitization or government-guarantee structure claimed or received servicing rights, ownership rights, collection rights, payments, credits, or economic benefits connected with the same receivable.

39. Defendants did not disclose a transaction-level chain showing when the receivable was sold or transferred, who paid consideration, who held the right to enforce, who received borrower payments and foreclosure proceeds, or how third-party proceeds, advances, credits, insurance, guarantees, or federal program payments were applied.

40. Plaintiff alleges that federal insurance, guarantee, advance, credit, or related proceeds were received, requested, or available in connection with the loan. Plaintiff does not allege that such proceeds necessarily extinguished the debt; she alleges that Defendants were required to account accurately for all value received and could not obtain or retain an undisclosed double recovery.

41. Plaintiff requested an explanation of the owner, servicer, holder, beneficial-interest chain, and account history. The responses did not reconcile the 424B5/prospectus records, the conflicting note or note data, the transfers between Flagstar and Nationstar, the amounts demanded, and the economic benefits received by all interested entities.

**F. Trust Deed, Sale, and Post-Sale Accounting**

42. A deed conveying the Property to the SHONDA YVETTE WILLIAMS TRUST was recorded in Blair County on November 5, 2025, at Instrument No. 202516853, before the sheriff's sale.

43. Flagstar and KML had actual or record notice of the Trust's recorded interest before the sale. They nevertheless continued using inconsistent names and did not provide Plaintiff a clear record showing whether the affidavit, owner-and-interest-holder identification, and notices required by Pennsylvania Rules of Civil Procedure 3129.1 and 3129.2 were updated to reflect the recorded ownership information then available.

44. After receiving notice of the Trust deed, Plaintiff's disputes, her requests for accounting, and the asserted servicing violations, Defendants continued enforcement activity. Plaintiff pleads this documented course of conduct as evidence of notice, knowledge, causation, and damages.

45. The Property was sold at sheriff's sale on January 14, 2026. A sheriff's deed to Flagstar dated February 6, 2026 was recorded on February 11, 2026.

46. As of the filing of this amendment, Plaintiff has not received any Form 1099-A or equivalent acquisition-or-abandonment record that may have been filed concerning the Property. Plaintiff does not allege that the absence of that tax form independently voids the sale; she identifies it as part of the still-unreconciled acquisition and accounting record.

47. Defendants have not supplied a complete post-sale reconciliation showing the credit bid or sale proceeds, their application to the claimed balance, the resulting balance, the identity of every

recipient or beneficiary, and whether any surplus, deficiency, reimbursement, insurance, guarantee, tax, or investor claim was made.

### G. Notice, Disputes, and Injury

48. Plaintiff repeatedly disputed the amount and legal status of the alleged debt and requested information sufficient to identify the owner, servicer, holder, payment history, transfer history, note history, and application of third-party proceeds. Her written communications identified Plaintiff, the account, and the reasons she believed the servicing and accounting were erroneous.

49. Flagstar and Nationstar failed to conduct and communicate a reasonable investigation that addressed the substance of the asserted errors. Their responses repeated conclusions, relied on incomplete records, or shifted responsibility without producing a unified transaction history.

50. KML received Plaintiff's disputes and notices but continued to communicate and litigate amounts and rights that had not been reconciled. KML's communications conveyed that the amount, creditor identity, and right to collect were established when material account and ownership conflicts remained undisclosed or unresolved.

51. As a direct and proximate result of Defendants' conduct, Plaintiff lost use, possession, and equity associated with the Property; incurred mailing, copying, travel, filing, research, and other out-of-pocket expenses; lost opportunities to protect or resolve the loan; suffered damage to credit and financial affairs; and experienced substantial distress and disruption.

## COUNT I

## RESPA AND REGULATION X—LOSS-MITIGATION VIOLATIONS

### Against Flagstar

52. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

53. Flagstar was a "servicer" within the meaning of 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.31.

54. Plaintiff submitted a complete loss-mitigation application, or supplied all information Flagstar required to complete the application, more than 37 days before the foreclosure sale.

55. Flagstar failed to exercise reasonable diligence to complete the application, failed to identify and permit cure of any genuinely missing item, failed to provide a compliant written evaluation and reasons, and continued prohibited foreclosure steps while review or available appeal rights remained unresolved, in violation of 12 C.F.R. § 1024.41(b)(2), (c), and (g).

56. Flagstar's conduct was part of a pattern or practice of noncompliance, including repeated failures to reconcile Plaintiff's submissions, ownership information, and foreclosure activity.

57. Plaintiff suffered actual damages caused by these violations and is entitled to relief under 12 U.S.C. § 2605(f), including actual damages, statutory damages upon proof of a pattern or practice, costs, and other relief allowed by law.

## COUNT II

## RESPA—SERVICING TRANSFER, NOTICES OF ERROR, AND REQUESTS FOR INFORMATION

### Against Flagstar and Nationstar

58. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

59. Plaintiff sent written servicing disputes, notices of error, and requests for information that enabled Flagstar and Nationstar to identify Plaintiff and the mortgage account and that explained the errors or information requested.

60. The requests concerned, among other things, the identity of the owner and servicer, the effective date and nature of transfer, the complete payment history, suspense and advance activity, the amount and basis of charges, the note and assignment history, and the application of third-party proceeds or credits.

61. Flagstar and Nationstar failed to acknowledge, investigate, correct, and substantively respond as required by 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.33, 1024.35, and 1024.36. They also failed to provide a clear and accurate servicing-transfer reconciliation.

62. The violations caused actual damages, including expenses incurred pursuing information and correction, loss of opportunities to resolve the account, credit and property-related injury, and other consequential loss.

63. Plaintiff seeks the relief authorized by 12 U.S.C. § 2605(f).

**COUNT III**

**TILA AND REGULATION Z—OWNERSHIP-TRANSFER NOTICE**

**Against Nationstar, Pleaded in the Alternative**

64. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

65. Nationstar acquired or claimed to acquire an ownership interest in Plaintiff’s mortgage loan during 2025. If Nationstar became the new owner or assignee of the debt, it was required to provide the disclosures mandated by 15 U.S.C. § 1641(g) and 12 C.F.R. § 1026.39.

66. Plaintiff did not receive a timely, accurate written notice identifying Nationstar as the new creditor, the date of transfer, contact information, and the location where transfer of ownership was recorded.

67. If Nationstar contends that it acquired only servicing and not ownership, Plaintiff pleads Count II instead. Defendants possess the agreement and loan-level records necessary to establish which alternative is correct.

68. Plaintiff seeks actual and statutory damages, costs, and all relief authorized by 15 U.S.C. § 1640.

## COUNT IV

## FDCPA—FALSE OR MISLEADING REPRESENTATIONS AND UNFAIR COLLECTION

### Against KML and Nationstar

69. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

70. The alleged mortgage obligation was a "debt" incurred primarily for personal, family, or household purposes within the meaning of 15 U.S.C. § 1692a(5).

71. KML regularly collects defaulted consumer mortgage debt for others and acted as a debt collector by sending collection communications, stating amounts due, identifying a creditor, and using judicial foreclosure to obtain payment or enforce the alleged debt.

72. Nationstar obtained or asserted collection rights after default and acted as a debt collector to the extent it collected or attempted to collect the defaulted obligation for another or under a name and capacity covered by 15 U.S.C. § 1692a(6).

73. KML and Nationstar misrepresented or failed to disclose material information concerning the identity of the creditor, the character, amount, and legal status of the debt, the effect of transfer, and the basis for amounts demanded, despite notice of the unreconciled records.

74. The use of conflicting creditor identities, incomplete balances, unreconciled note information, and collection or enforcement activity without a substantiated account violated 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and, as applicable, 1692f and 1692f(6).

75. The violations caused Plaintiff actual damages. Plaintiff seeks actual damages, statutory damages, costs, and all other relief authorized by 15 U.S.C. § 1692k.

## COUNT V

## PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT AND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

**Against All Defendants**

76. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

77. The mortgage transaction and related servicing and collection concerned a residential property and services obtained primarily for personal, family, or household purposes.

78. Defendants engaged in unfair or deceptive conduct, including materially inconsistent representations about the creditor, servicer, owner, amount, account status, note history, transfer history, loss-mitigation status, and entitlement to collect or enforce the receivable.

79. Flagstar and Nationstar failed to disclose and reconcile material economic facts concerning transfers of the receivable and the application of payments, credits, advances, guarantees, insurance, sale proceeds, or other third-party value.

80. KML used or communicated materially incomplete creditor and balance information in collecting the debt after receiving Plaintiff's specific disputes. To the extent KML's conduct violated the FDCPA, it also constituted prohibited conduct under 73 P.S. § 2270.4.

81. Defendants' conduct violated the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 et seq., and constituted fraudulent or deceptive conduct creating a likelihood of confusion under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-2(4) and 201-3.

82. Plaintiff justifiably relied on Defendants' representations and omissions by repeatedly supplying requested documents, pursuing the review and dispute processes Defendants directed her to use, refraining from or losing other opportunities to protect the Property, and expending money and time in response to the asserted account status and collection demands.

83. Plaintiff thereby suffered ascertainable losses of money and property. She seeks actual damages, statutory or treble damages where authorized, costs, and all relief available under 73 P.S. § 201-9.2 and other applicable law.

## COUNT VI

## DECLARATORY RELIEF AND TRANSACTION-LEVEL RECONCILIATION

### Against Flagstar and Nationstar

84. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

85. An actual controversy exists concerning which entity owned, serviced, collected, or held beneficial interests in the receivable at each material time; the legal capacity in which each Defendant acted; the balance after all lawful credits; and the accuracy of Defendants' transfer and account representations.

86. The controversy cannot be resolved by conclusory statements that one entity "believes" the claims fail. The operative agreements, custodial records, loan-level transfer data, and complete accounting are within Defendants' possession or control.

87. Plaintiff seeks declarations, to the extent within this Court's jurisdiction, identifying: (a) the owner and servicer at each material time; (b) the authority under which each Defendant collected or enforced; (c) the amount lawfully due after all payments and credits; (d) whether Nationstar acquired ownership or servicing only; and (e) whether Defendants' challenged communications and servicing practices violated the statutes pleaded above.

88. Plaintiff also seeks an order requiring production and reconciliation of the complete transaction-level account history as appropriate relief ancillary to the substantive claims. Plaintiff does not plead "accounting" as a substitute for an otherwise viable cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shonda Y. Williams respectfully requests that the Court enter judgment in her favor and against Defendants, and award:

A. Actual and compensatory damages in an amount to be determined at trial;

B. Statutory damages, enhanced damages, and treble damages where authorized by law;

C. Punitive damages on the state-law claims to the extent permitted by the evidence and law;

D. Declaratory and equitable relief within this Court's jurisdiction, including the transaction-level reconciliation described above;

E. Prejudgment and post-judgment interest;

F. Taxable costs and any fees recoverable by law; and

G. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on every issue so triable.

Dated: September 24, 2026

Respectfully submitted,

**/s/ Shonda Y. Williams**
Shonda Y. Williams, Sui Juris
P.O. Box 5129
Jersey City, NJ 07305
shondawilliams4995@yahoo.com
(551) 430-2933
Plaintiff

**DECLARATION UNDER 28 U.S.C. § 1746**

I, Shonda Y. Williams, declare under penalty of perjury that I have reviewed this First Amended Complaint and that the factual allegations concerning my acts, communications, records, and experiences are true and correct to the best of my personal knowledge and based on the records identified in this pleading. Where an allegation concerns information maintained exclusively by a Defendant or third party, I state it from the records presently available and seek confirmation through disclosure and discovery.

Executed on September 24, 2026.

**/s/ Shonda Y. Williams**
Shonda Y. Williams

## CERTIFICATE OF SERVICE

I certify that on September 24, 2026, I filed the foregoing through the Court's electronic filing system, which provides notice to registered counsel of record, and served a true copy by first-class United States mail upon any party not receiving electronic notice at that party's address of record.

/s/ Shonda Y. Williams

Shonda Y. Williams